J-S18008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EVAN T. CZARNECKI | : | |
| | : | |
| Appellant | : | No. 1510 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 23, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0005262-2019

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 09, 2022**

Appellant, Evan T. Czarnecki, appeals from the judgment of sentence of 2-10 years' incarceration and 5 years' consecutive probation, imposed following the trial court's acceptance of his guilty plea to aggravated indecent assault ("AIA"), 18 Pa.C.S. § 3125(a)(7), and corruption of minors ("COM"), 18 Pa.C.S. § 6301(a)(1)(i).  Herein, Appellant challenges the sufficiency of the evidence supporting his designation as a sexually violent predator ("SVP").  After careful review, we affirm.

On November 1, 2020, Appellant entered a negotiated guilty plea to the above-stated offenses.  At that hearing, Appellant admitted to facts sufficient to sustain his convictions for those offenses.  N.T. Plea, 11/2/20, at 5-6.  Specifically, Appellant admitted that on the evening of June 24, 2019 (and/or early morning of June 25, 2019), when he was 18 years old, Appellant engaged in multiple sexual acts with a 12-year-old female victim,

R.A, at her home in Berks County. *Id.* Specifically, Appellant admitted that he "placed his fingers into her vagina[,]" "had her put her mouth on his penis, and that he … st[u]ck his penis into her vagina." *Id.* at 6. In exchange for his plea to AIA and COM, the Commonwealth agreed to a negotiated sentence of 2-10 years' incarceration, a consecutive term of 5 years' probation, and restitution of $6,437.04. *Id.* Following its acceptance of Appellant's negotiated guilty plea, the trial court ordered an evaluation of Appellant by the Sexual Offender Assessment Board ("SOAB"). *Id.* at 9-10.

SOAB board member Dr. Veronique Valliere, a licensed psychologist, conducted the court-ordered evaluation to determine if Appellant was an SVP, and testified at the SVP hearing held on July 14, 2021. N.T. SVP Hearing, 7/14/21, at 4-7. Appellant did not contest her qualifications as an expert.[1] *Id.* at 5. Additionally, Dr. Valliere's report was admitted without objection.[2] *Id.* at 7. Dr. Valliere ultimately concluded that Appellant met the statutory criteria for an SVP. *Id.* at 10. Immediately following the

---

[1] Frustratingly, we must add a caveat due to the following note by the court reporter in the transcript: "At the direction of the [t]rial [j]udge, this transcript shall be considered as containing an exception to every ruling by the [c]ourt." *Id.* at 3. Thus, but for this catch-all, waiver-avoidance mechanism of questionable utility, Appellant did not make any arguments at the hearing regarding Dr. Valliere's expertise despite being specifically prompted for them. *Id.* at 5.

[2] Again, the report was admitted into evidence without any specific objection by Appellant, notwithstanding the court's instructions discussed above. *See* footnote 1, *supra*.

hearing, the trial court entered an order deeming Appellant to be an SVP, thereby subjecting Appellant to the corresponding registration and notification requirements under SORNA II.[3] SVP Order, 7/14/21, at 1 (single page).

Appellant's sentencing hearing occurred on August 23, 2021, when the court sentenced him in accordance with the terms of the plea agreement, and he was notified by the court of his duty to register for life as an SVP in accordance with SORNA II. On September 13, 2021, Appellant filed a motion seeking to file a post-sentence motion *nunc pro tunc*, which the trial court granted a day later. Following a post-sentence motion hearing held on October 13, 2021, the court ultimately denied Appellant's post-sentence motion on October 18, 2021. Appellant then filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on January 27, 2022.

Appellant now presents the following question for our review:

> Did the court err in determining Appellant to be a[n SVP], where the determination was based on a diagnosis of "Other Specified Paraphilic Disorder to non-consent," which, as there is no law on the books that criminalizes consensual acts, would absurdly apply to render all defendants convicted of sexual offenses paraphilic; and where, moreover, the majority of the fourteen

_____

[3] "SORNA II" is shorthand for Pennsylvania's Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10–9799.41, as amended by the Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10), and the Act of June 12, 2018, P.L. 1952, No. 29 ("Act 29").

factors that the Commonwealth's expert considered actually favored a determination that Appellant is not an SVP?

Appellant's Brief at 4.

Appellant presents two distinct challenges to his designation as an SVP. First, he claims that his diagnosis by Dr. Valliere was legally insufficient to support his SVP designation. *Id.* at 10-19. Second, Appellant asserts that SVP factors considered by Dr. Valliere instead favored a conclusion that Appellant does not meet the criteria for designation as an SVP. *Id.* at 19-25.

[Our] standard and scope of review is well-settled:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa. Super. 2011)….

This Court has explained the SVP determination process as follows:

> After a person has been convicted of an offense listed in [42 Pa.C.S. § 9799.14], the trial [court] then orders an assessment to be done by the [SOAB] to help determine if that person should be classified as a[n SVP. An SVP] is defined as a person who has been convicted of a sexually violent offense ... and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the

- 4 -

defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory.... Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038–1039 (Pa. Super. 2013) (internal quotation marks, ellipsis, and citations omitted).

When performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. *See* 42 Pa.C.S.[] § 9799.24(b).

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189–90 (Pa. Super. 2015).

Instantly, Appellant first contests whether the Commonwealth provided clear and convincing evidence that he possessed a mental

abnormality that was sufficient to meet the definition of an SVP. He argues that his diagnosis by Dr. Valliere of having a paraphilic disorder to non-consent (hereinafter "non-consent paraphilia") is insufficient to constitute a qualifying mental abnormality under the SVP statute.

As background, "Dr. Valliere diagnosed [Appellant] with [non-consent paraphilia]." Trial Court Opinion ("TCO"), 1/27/22, at 6. She described the condition as an "entrenched deviate sexual arousal pattern[,]" exhibited over more than 6 months, which resulted in "a significant disruption" in Appellant's and/or "other people's lives." *Id.* Dr. Valliere discerned this pattern from Appellant's "long history of coercive and non-consensual sexual behavior that resulted in a previous adjudication[,] and now his current offense[,] which occurred while he was under the supervision of juvenile probation" for a previous sexual assault that Appellant committed as a juvenile. *Id.* Dr. Valliere determined that Appellant's non-consent paraphilia "served as the impetus to his offending and that he engaged in predatory behavior as delineated in her report." *Id.*

Appellant argues that, narrowly understood, his non-consent paraphilia diagnosis was not supported by the facts of this case:

> First, the circumstances of Appellant's offense, as admitted to by D[r.] Valliere herself, far from clearly and convincingly supporting her diagnosis of [non-consent paraphilia,] positively contradicted the diagnosis: for the offense did not even involve "non-consent" in the ordinary non-legal sense. Therefore[,] this mental abnormality of [non-consent paraphilia] could not possibly have served as "the primary impetus" or indeed as any "motivating factor" at all ... behind his offense: because non-consent in the everyday nonlegal sense was not even present.

- 6 -

Appellant's Brief at 13 (emphasis omitted).

Appellant further contends that the diagnosis of non-consent paraphilia, broadly read, would result in the absurdity of SVP status being applicable to all sex offenders:

> The second and only alternative inference is that by [non-consent paraphilia,] Doctor Valliere means that Appellant's "mental abnormality" lies in a perverted attraction to lack of legal consent; that the "primary impetus for his behavior" was the fact that the victim was unable to consent in a legal sense to the sexual act. But neither could such a "disorder" as this, if this is what she meant, be reasonably supposed to qualify as a "mental abnormality" in the statutory sense under SORNA: otherwise, absurdly, all sexual offenders would necessarily be SVPs, for there is no law on the books that criminalizes legally consensual sexual acts. At the very least, it would mean that all sexual offenders against victims under the age of sixteen and four years younger, anyone guilty of statutory sexual assault or worse, must be automatically designated as having a mental abnormality.

*Id.* at 14-15.

Finally, Appellant also argues that "[o]n a separate and more substantive level, too, the [trial] court erred in adopting D[r.] Valliere's conclusion that Appellant is an SVP, where a majority of the fourteen factors that she considered, by her own standards, actually heavily favored the contrary conclusion." *Id.* at 19-20.

The Commonwealth counterargues that,

> when reviewing the record and the determination of the trial court in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth met its burden of proving [Appellant's] SVP status by clear and convincing evidence. After her unchallenged qualification as an expert in the evaluation of individuals for SVP status, Dr. Veronique Valliere … testified that

she reviewed multiple documents and concluded that [Appellant] met the criteria to be classified as an SVP. [N.T.] SVP Hearing, [1/21/22, at] 7-9[]. [Appellant] met the diagnostic criteria for [non-consent paraphilia] due to his escalating non-consensual actions with juvenile females. [*Id.* at] 8[]. [Appellant's] pattern of behavior including his actions in this event and the prior event for which he was still under supervision showed a deviant arousal to forcing sexual contact on non-consenting females. [*Id.*]

This disorder is also related to the future likelihood of reoffending, as [Appellant's] specific disorder makes treatment and even remission difficult, as a cure is impossible. [*Id.* at] 10[]. He further recidivated while under supervision and treatment thereby himself proving his likelihood of reoffending, and consequences having no deterrent effect on his deviant sexual desires and his lack of volitional control. [*Id.* at] 9[]. Because [Appellant] exploited his access to the sister and/or girlfriends of his own friends (in both events) for the purpose of victimization, he also met the statutory definition of predatory behavior as he was facilitated or promoted these relationships for the purpose of victimization. [*Id.*] Dr. Valliere's opinion was made within a reasonable degree of certainty within her field of practice. [*Id.* at] 10[].

Commonwealth's Brief at 8-9.

To the extent that Appellant's challenge is directed at the ***sufficiency*** of the evidence supporting his SVP designation, we agree with the Commonwealth that this claim is meritless. Affording the Commonwealth all reasonable inferences under our standard of review, we conclude that Dr. Valliere's expert testimony and corresponding report adequately described a "personality disorder that makes" Appellant "likely to engage in predatory sexually violent offenses[,]" in satisfaction of each of the elements of the statutory criteria for what constitutes an SVP. ***Stephens***, ***supra***. We note that "an expert's opinion, which is rendered to a reasonable degree of

professional certainty, is itself evidence." ***Commonwealth v. Fuentes***, 991 A.2d 935, 944 (Pa. Super. 2010).

Appellant's attempts to attack the diagnosis underpinning the mental-abnormality element as overbroad, illogical, and/or the mere product of "obscurantist gobbledygook" of the social sciences, ***see*** Appellant's Brief at 24, go to the weight, not the sufficiency, of the evidence. It is generally beyond the purview of this Court, in the context of a sufficiency claim, to entertain direct challenges to the science underlying the evidence that is used by the Commonwealth to fulfill its statutory burden under the SVP statute. As this Court has previously stated, "while a defendant is surely entitled to challenge such evidence by contesting its credibility or reliability before the SVP court, such efforts affect the weight, not the sufficiency of the Commonwealth's case. Accordingly, they do not affect our sufficiency analysis." ***Commonwealth v. Feucht***, 955 A.2d 377, 382 (Pa. Super. 2008) (citations omitted). Thus, even had Appellant directly challenged the credibility or reliability of the non-consent-paraphilia diagnosis below, we would still conclude that the evidence was ***sufficient*** to support his designation as an SVP given our obligation to view the evidence in a light most favorable to the Commonwealth. Accordingly, Appellant's argument

that his non-consent paraphilia diagnosis was insufficient to support his SVP designation is meritless.[4]

Even if we were to entertain Appellant's sufficiency claim(s) under the rubric of a challenge to the weight of the evidence,[5] despite Appellant explicitly framing it as a sufficiency claim, we would still be unconvinced that the trial court abused its discretion in denying relief.

_____

[4] We also note that Appellant's assertion that a non-consent paraphilia diagnosis would apply to all sex offenders is untrue on its face. According to Dr. Valliere, the diagnosis requires a finding that the deviant arousal must "persist for greater than six months." N.T. SVP Hearing, 7/14/21, at 8. Thus, the diagnosis clearly requires something more than a single conviction for a sexual offense.

[5] The Commonwealth argues that Appellant waived any challenge to the weight of the evidence supporting his SVP designation 1) because his post-sentence motion was ambiguous as to whether a weight claim was being raised therein; 2) because his Rule 1925(b) statement did not explicitly raise a weight claim; and 3) because Appellant does not explicitly raise a weight claim in his brief. Commonwealth's Brief at 11. However, in its Rule 1925(a) opinion, the trial court appears to have treated Appellant's Rule 1925(b) statement as having raised a weight claim, specifically indicating that Appellant preserved that claim in his post-sentence motion. TCO at 4. Notably, however, Appellant has not specifically raised a weight claim in his brief, nor does he reference any weight-of-the-evidence caselaw in his statement of the scope and standard of review. *See* Appellant's Brief at 3. Accordingly, even if we were to agree with the trial court that Appellant preserved a weight-of-the-evidence challenge to his SVP designation in his post-sentence motion and in his Rule 1925(b) statement, Appellant nevertheless waived the claim by failing to develop it in his brief. *Commonwealth v. Ellis*, 700 A.2d 948, 957 (Pa. Super. 1997) (holding that the appellant waived a claim when he failed to "develop any argument or cite any authority in support" of that claim in his brief).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

[**Commonwealth v.**] **Widmer**, … 744 A.2d [745,] 753 [Pa. 2000]….

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

[**Id.**] (quoting **Coker v. S.M. Flickinger Co.**, … 625 A.2d 1181, 1184–85 ([Pa.] 1993)).

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (some citations

omitted).

- 11 -

Here, Appellant had multiple opportunities in the trial court to test the science pertaining to a diagnosis of non-consent paraphilia as it related to the mental abnormality, such as challenging the diagnosis by providing his own expert (either to contest the diagnosis as unmoored from the relevant science as it pertains to the SVP statute and/or to challenge its applicability to Appellant), or by challenging Dr. Valliere's qualifications to testify as an expert witness. He failed to avail himself of these opportunities. Consequently, the record is effectively devoid of any evidence relevant to Appellant's designation as an SVP but for Dr. Valliere's expert opinion. In these circumstances, Appellant cannot meet the high burden of demonstrating that the trial court committed an abuse of discretion in denying his claim that the SVP designation was against the weight of the evidence.

Appellant also argues that the evidence supporting his designation as an SVP was insufficient "where a majority of the fourteen factors that [Dr. Valliere] considered, by her own standards, actually heavily favored the contrary conclusion." Appellant's Brief at 19-20. Appellant contends that he "is not asking this Court to 'reweigh'" these factors, and instead asserts that the SVP designation was based on such tenuous inferences that, "as a matter of law[,] no probability of fact may be drawn from the combined circumstances." *Id.* at 20 (quoting **Commonwealth v. Thomas**, 194 A.3d 159, 166 (Pa. Super. 2018) (noting, as part of our standard of review of sufficiency claims, that "[a]ny doubts regarding a defendant's guilt may be

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances")).  Specifically, Appellant claims:

Speaking in extremely rough and simplistic terms (for within each factor there might be smaller sub-factors of ambiguous or conflicting weight), of the fourteen factors statutorily to be considered for purposes of this SVP[ ]analysis, about two fifths favored Appellant, about two fifths were of neutral or equivocal tendency, and just one fifth tended to favor D[r.] Valliere's conclusion that Appellant is an SVP.  If the small minority of adverse factors were to be accorded more weight than the others, for whatever reason, D[r.] Valliere did not explain.

Factors tending to favor her conclusion were that the sexual offense was not his first, as he had been adjudicated delinquent for [i]ndecent [c]ontact; he failed to comply with the probationary requirements entailed by that offense, and committed the present offense while still on probation; his conduct was opportunistic and exploitative, and he impulsively engaged in it this second time in reckless disregard of legal risks well known to him.  (It must be noted, however, that the doctor who officially evaluated Appellant following his first offense concluded that he did not need juvenile sex-offender treatment.[)]

In significant extenuating contrast, the [instant] offense involved a single incident with one victim[,] did not involve physical compulsion, and occurred mere feet away from the victim's tacitly or perhaps explicitly encouraging older sister.  As conceded by D[r.] Valliere, too, the victim was not in an unusually vulnerable or compromised position, and Appellant did not exceed the means necessary to commit the particular kind of [AIA] of which he was convicted, the essential element of which was simply the victim's age.  But Appellant was practically a juvenile himself, being freshly eighteen years old at the time[.] [T]his, the relative lack of disparity between the parties' ages, both of them adolescents, should have been the most important circumstance to be considered—along with the circumstance of there being no physical coercion involved—and yet it was passed over without comment.

- 13 -

***Id.*** at 20-22.

Despite initially assuring this Court explicitly that he was not inviting us to reweigh these statutory factors, Appellant's argument nevertheless implicitly demands that we reweigh the statutory factors in his favor. This is precisely what our Supreme Court rejected in ***Commonwealth v. Meals***, 912 A.2d 213 (Pa. 2006), as improper argument in a challenge to the sufficiency of the evidence supporting an SVP designation. The ***Meals*** Court rejected the very premise that the statutory "factors operate as a checklist where each factor weighs, in some absolute fashion, either for or against an SVP classification." ***Id.*** at 222. Yet, this is precisely Appellant's argument: that more factors weighed against his SVP designation than weighed in favor of it. As a sufficiency claim, this argument is meritless. Moreover, as discussed above, Appellant waived any weight-of-the-evidence claim by failing to properly develop such a claim in his brief.

In any event, we would also deny relief had Appellant preserved this matter as a weight claim. Appellant has failed to meet the high burden of showing that the SVP designation was against the weight of the evidence. As noted above, Appellant had the opportunity to challenge the Commonwealth's expert by challenging her expertise, or by proffering his own expert testimony, yet he failed to do so, or was otherwise unable to procure such testimony. In these circumstances, we would ascertain no abuse of discretion in the trial court's finding Dr. Valliere's report and

testimony credible or in its weighing of the statutory factors, had Appellant properly preserved such a claim for our review.

Judgment of sentence **_affirmed_**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/09/2022